UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA M.,[1] | ) |
| | ) No. 20 CV 1510 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of | ) |
| Social Security, | ) |
| | ) May 8, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Donna M. filed for disability insurance benefits ("DIB") because she says severe back pain, hypertensive cardiovascular disease, hypertension, brittle diabetes impairment, multiple sclerosis ("MS"), arthritis, anxiety, and depression prevent her from working. She now brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for DIB. Before the court are cross motions for summary judgment. For the following reasons, Donna's motion is granted, and the government's is denied:

**Procedural History**

Donna filed a DIB application in October 2016 alleging disability onset beginning in February 2016 (Administrative Record ("A.R.") 36, 43.) Her application was denied initially and upon reconsideration. (Id.) She then sought and was

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect her privacy to the extent possible.

granted a hearing before an Administrative Law Judge ("ALJ"). (Id.) Donna appeared with her attorney at the August 2018 hearing, during which Donna and a vocational expert ("VE") testified. (Id.) The ALJ ruled in January 2019 that Donna was not disabled. (Id. at 51.) The Appeals Council denied Donna's request for review, (id. at 1), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Donna then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 1, Complaint; R. 7).

## Analysis

Donna argues that the ALJ erred in finding that she retained the residual functional capacity ("RFC") to "perform sedentary work" with limitations. (A.R. 48.) More specifically, she says the ALJ failed to properly weigh opinion evidence and improperly discounted her subjective symptom allegations. (R. 23, Pl.'s Mem. at 19-29; see also A.R. 11-24.) She also argues that the Appeals Council failed to consider new evidence she submitted a year after the ALJ's decision.

When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and her decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if

2

the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). In this circuit the ALJ must also "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), providing enough detail "to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Pursuant to these standards, the court finds that Donna's symptom assessment argument warrants a remand, but not her other arguments.

**A.     Opinion Evidence**

Donna argues that the ALJ erred by failing to assign controlling weight to her treating physicians' opinions and "discounting" the physical limitations her treating providers recommended, while giving greater weight to the non-examining state agency medical consultants' opinions. (R. 23, Pl.'s Mem. at 20-26.) The ALJ assigned the following weights to the opinion evidence:

- "very limited weight" to neurologist Dr. Jeffrey Curtin's two opinions—one undated and one dated May 15, 2018, (A.R. 650, 683-689)—because they lack supporting objective medical evidence, (R. 23, Pl.'s Mem. at 21; A.R. 53);

- "limited weight" to physiatrist Dr. Joseph Rabi's opinion, (A.R. 712-14), because it lacks supporting clinical examination findings, includes an allegedly inaccurate limitation onset date, and shows her response to treatment with medication, (R. 23, Pl.'s Mem. at 21; A.R. 53);

- "limited weight" to the April 2, 2018 opinions from orthopedist Dr. Mark Chang, (A.R. 752-57), because he failed to explain the underlying evidence for his opinions and based them on Donna's subjective complaints, (R. 23, Pl.'s Mem. at 21-22; A.R. 54);

3

- "some weight" to a June 30, 2016 note from Dr. Chang, (A.R. 490), stating that Donna's restrictions were no longer necessary, (R. 23, Pl.'s Mem. at 22; see A.R. 52);

- "limited weight" to primary care physician Dr. Lloyd Blakeman's opinions, (A.R. 644, 520-24), because they lack supporting objective medical or clinical evidence, (R. 23, Pl.'s Mem. at 22; A.R. 52); and

- "some weight" to the opinions from the non-examining state agency medical consultants, (R. 23, Pl.'s Mem. at 22; A.R. 52, 156, 171-72).

A treating physician's opinion in cases filed before March 27, 2017—which is the case here—is generally entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (internal quotation and citation omitted). However, "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1099-1100 (internal quotation and citation omitted); *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (citation omitted). The Seventh Circuit "uphold[s] all but the most patently erroneous reasons for discounting a treating physician's assessment," *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (internal quotation and citation omitted), so long as the ALJ "minimally articulated [her] reasons—a very deferential standard," *Elder v. Astrue*, 529 F.3d 408, 418 (7th Cir. 2008) (citation omitted). "A finding is clearly erroneous when, even though there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

been committed." *Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d 810, 812-13 (7th Cir. 2013).

Donna complains that the ALJ erroneously afforded more weight to "non-examining state agency medical consultant[s]" than to her treating physicians. (R. 23, Pl.'s Mem. at 22.) The ALJ assigned "some weight" to the psychiatric consultants who evaluated Donna and found her mental impairments to be "non-severe." (A.R. 54 (citing id. at 153-54, 170).) Specifically, the consultants found that Donna appears to suffer from depression and anxiety, but these conditions—based on the evidence in the medical records—"would impose no more than mild limitation in functioning." (Id. at 154; see also id. at 170.)

First, the court notes that none of Donna's treating physicians is a psychiatrist or psychologist, and so there is a dearth of information in her medical records related to Donna's mental health, behavior, and cognitive functioning. "Among the factors an ALJ must consider in weighing a medical opinion after deciding not to give a treating source's opinion controlling weight [is] . . . the physician's specialty[.]" *Ray*, 861 Fed. Appx. at 105. Therefore, the ALJ reasonably placed more weight on the consulting physicians' opinions regarding Donna's mental health than those of the treating physicians' given their lack of specialty in that discipline. *See id.*

Second, the ALJ limited the weight she afforded to the two state consultants because their opinions predate portions of the medical record, (see A.R. 54, 151, 169). The ALJ recognized that the consultants were without some of the medical

5

records at the time of their review and found that "mental limitations resulting from the waxing and waning of [Donna's] MS and her symptoms of chronic pain" warranted a more restrictive RFC. (Id. at 54.) Against this backdrop, the ALJ assigned Donna an RFC to perform "sedentary work," (id. at 48), despite the medical consultants' opinions that Donna could perform more strenuous work, (see id. at 156-57, 171-72). Limitations such as this "highlight the ALJ's efforts to give appropriate weight to conflicting medical opinions," which ultimately suggests that "the ALJ competently grappled with competing evidence and provided legitimate reasons for favoring certain pieces of evidence over others." *Stepp*, 795 F.3d at 720-21.

Donna also argues that the ALJ erred in the weight she afforded to Dr. Chang's opinions. The ALJ assigned "some weight" to a June 30, 2016 medical record Dr. Chang prepared, which documents Donna's improved ambulation and strength, good healing, and decreased pain after undergoing a post-lumbar fusion operation and recommends that Donna "increase sitting time as tolerated . . . resume local driving, and start physical therapy." (A.R. 52; see also id. at 489.) But the ALJ gave only limited weight to Dr. Chang's more recent opinion that Donna's pain is excessive and her physical capabilities are limited, which Donna argues constituted impermissible cherry-picking. ALJs are not permitted to "'cherry-pick' from [] mixed results to support a denial of benefits," *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), and other medical notes indicate Donna's tenderness in response to palpation in the lower back and neck, (see, e.g., A.R. 464 (April 29, 2016

6

records from Dr. Curtin), 517 (Dec. 20, 2016 records from Dr. Dixon), 556 (March 14, 2017 notes from Dr. Dixon)), which may support her complaints of pain. *See, e.g.,* L. Keating et al, *Mid-thoracic tenderness: a comparison of pressure pain threshold between spinal regions, in asymptomatic subjects*, 6(1) MANUAL THERAPY 34, 34 (Feb. 2001) ("Tenderness in the thoracic spine has been reported in the literature as a clinical feature in musculoskeletal conditions where pain and dysfunction are located primarily in the upper quadrant."). That said, the ALJ did credit the treating physicians' records that favor Donna's pain allegations in her assessment of whether Donna's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with these records. (See A.R. 49-52.) Because the ALJ "address[ed] and acknowledg[ed] significant contrary evidence in the record" and even relied on such evidence in granting Donna a very limiting RFC, the court does not find any errors warranting a remand. *See Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015) (citing *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014)).

Donna continues her argument by claiming that the ALJ failed to weigh treating source medical opinions "using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927," resulting in reversible error. (R. 23 at 26.) While "generally acknowledging the factors is insufficient," an ALJ's decision will be affirmed where a court finds that the "reasoning sufficiently accounted for the substance of the prescribed factors." *Ray v. Saul,* 861 Fed. Appx. 102, 105-06 (7th Cir. 2021). Here, the ALJ extensively discussed Donna's treating physicians' notes, the circumstances

under and the dates during which they treated Donna, the tests they performed, and the treatment they provided over a span of years. (See A.R. 43-49.) This court finds that the ALJ accounted for the substance of the factors as required by SSR 96-2p and thus does not find an error warranting remand on this basis.

Finally, Donna claims that the ALJ's refusal to adopt any of Donna's treating physicians' opinions resulted in an "evidentiary deficit" that she filled with her "lay opinion" in defining the RFC. (See R. 23, Pl.'s Mem. at 26-27 (citing *Suide v. Astrue*, 371 Fed. Appx. 684 (7th Cir. 2010).) Donna argues that the ALJ's supposed "fail[ure] to cite to any *specific* medical facts or to even persuasive medical evidence" supporting the RFC is reversible error. (R. 23, Pl.'s Mem. at 26.) This court disagrees. Where ALJs do not rely upon medical opinions in crafting the RFC, they must "thoroughly discuss[] the medical and other evidence carefully" and explicitly "describ[e] how the evidence supports each [RFC] conclusion." *Norris v. Astrue*, 776 F.Supp.2d 616, 637 (N.D. Ill. March 2, 2011) (citing SSR 96-8p); *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771 (N.D. Ill. Jan. 14, 2020). But the ALJ offers pages of analysis regarding Donna's medical history pursuant to the record and explains that she limited Donna's RFC to sedentary work given the lack of "significant limitations in range of motion, neurological loss, muscle spasm, or atrophy," her full strength, and improvement in her condition with treatment and medication. (See A.R. 49.) She also prescribes cognitive limitations because of Donna's "waxing and waning of . . . symptoms of [MS] and chronic pain" and her

8

expressive communication difficulties presented at the hearing. (Id.) For these reasons, the court finds no error on this ground either.

**B.     New Records**

Donna argues that the Appeals Council failed to consider new records she submitted after the ALJ's decision documenting in-home nursing services she received between December 2018 and April 2019. (R. 23, Pl.'s Mem. at 30.) A year after the ALJ's January 2019 decision denying the DIB application, Donna submitted: (1) home services program time sheets from March 2019 and April 2019, showing that a "personal assistant" visited her home between four and five times each month to assist her for about eight hours, (A.R. 13-14); (2) a home health provider form showing that Donna received antibiotics in December 2018, (id. at 15); (3) a September 2018 prescription for an in-home IV, (id. at 16-17); (4) a letter from Donna's mother, dated February 5, 2019, attesting to Donna's medical challenges, (id. at 18); and (5) a psychiatric/psychological impairment questionnaire a licensed social worker completed in February 2019,[2] (id. at 20-24). The Appeals Council declined to consider these records because they did not "affect the decision about whether [Donna was] disabled beginning on or before December 31, 2018." (Id. at 7.) The Appeals Council described the medical records as records "from Elizabeth Brennan MSW, dated February 11, 2019 (6 pages) and State of Illinois, Department of Human Services ["Home Services Times Sheets"], dated April 30,

---

[2] Records from this licensed social worker are not included in the Administrative Record. Also, a licensed social worker is not an "acceptable medical source." *Soga v. Colvin*, No. 15 CV 215, 2016 WL 5409059, at *11 (N.D. Ind. Sept. 28, 2016) (citing SSR 06-03p; 20 C.F.R. §§ 416.902, 416.927(d)).

9

2019 (5 pages) and statement from [Donna's mother], dated February 5, 2019 (1 page)." (Id.)

Evidence submitted in the first instance to the Appeals Council can be considered if deemed "new and material" and "relate[d] to the period on or before the date of the [ALJ] hearing decision." *Stepp*, 795 F.3d at 721 (citing 20 C.F.R. § 404.970(b)). If so, the Appeals Council incorporates the new evidence into the record before issuing its decision. *Id.* Here, the Appeals Council correctly declined to designate the home services program time sheets, letter from Donna's mother, and psychiatric/psychological impairment questionnaire as "new and material" because they are dated between February and April 2019, which post-date the ALJ's January 29, 2019 decision. (See A.R. 7.) However, the Appeals Council erroneously classified as "not relate[d] to the period at issue" the two-page September 4, 2018 prescription for an in-home IV, which states, "IV delivery today," and the one-page December 3, 2018 home health providers form documenting Donna's prescriptions. (See id.)

Because the Appeals Council erroneously deemed these last two documents as outside the relevant period, the court reviews *de novo* whether the information is "new and material" under 20 C.F.R. § 404.970(b). *See Stepp*, 795 F.3d at 725. The court need not answer whether the documents are "new," however, because it finds that they are not material. In determining whether the information is "material," the court considers whether it: (1) sheds light on the nature of Donna's condition before the ALJ's decision; and (2) presents a "'reasonable possibility' of changing the

10

ALJ's decision." *Maxwell v. Sullivan*, 792 F. Supp. 582, 593 (N.D. Ill. April 27, 1992).

The ALJ noted that Donna "was to have six (6) days of home antibiotics" to treat an infection she suffered after having surgery, a regimen she declined to complete "against medical advice." (A.R. 49.) The ALJ referenced this data point in analyzing the intensity, persistence, and limiting effects of Donna's symptoms. (Id.) Donna testified during the ALJ hearing that "an actual nurse"—who is also her daughter-in-law—has assisted her with daily activities "for years," including ensuring that Donna bathes instead of showers, helping her dress, and cooking. (Id. at 119.) But the ALJ discounted this testimony because there was "no mention in the record of the need for home care due to cognitive/communicative deficits, seizures, back pain, or other impairment such as [Donna] described at the hearing." (Id. at 44.) Rather, she found that "the only mention in the record of possible home care was for treatment with antibiotics," which the ALJ states Donna discontinued against medical advice. (Id.) Although the records submitted in 2020 suggest that Donna did receive antibiotics in 2018 to treat a post-surgical infection, (id. at 17), they do not refute the ALJ's understanding that no provider prescribed at-home services to manage Donna's pain and physical limitations. Therefore, the prescriptions for and record of antibiotics do not result in a "reasonable possibility" of changing the ALJ's decision, and a remand is not warranted on this basis either. *See Maxwell*, 792 F. Supp. at 593.

11

## C. Symptom Assessment

However, Donna's complaints about the ALJ's assessment of her symptoms result are worth noting. The ALJ found that Donna's descriptions of the "intensity, persistence, and limiting effects" of her symptoms were "inconsistent" with the medical records, (A.R. 49), which Donna argues is "patently wrong," (R. 23, Pl.'s Mem. at 28). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence," such as "treatment and efficacy," "daily activities," and consistency of those statements with the record, among other factors. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Where the ALJ gives specific reasons supported by the record, courts will not overturn a credibility determination "unless it is patently wrong." *Id.* at 1279. Where evidence within the medical record does not support a claimant's assertions of pain, and where "pain is a significant factor" of the claimant's inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects and investigate all avenues related to pain. *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000). If the ALJ still finds that the subjective statements are inconsistent with the record, she must "explain why the objective medical evidence does not support [the claimant's] complaints of disabling pain." *See id.* at 872.

The court finds that the ALJ satisfied her obligation to investigate Donna's daily activities. (See A.R. 104-37.) In finding that the severity of Donna's alleged symptoms did not align with the objective evidence, the ALJ cited to various records

12

showing that Donna's strength and range of motion were normal, her pain levels were improving with treatment, her September 2018 Spurling's test was negative—indicating an improvement in her radiculopathy—and her MS was not worsening. (Id. at 51.)

The ALJ also highlighted that "[t]here is no mention in the record of the need for home care due to cognitive/communicative deficits, seizures, back pain, or other impairment such as [Donna] described at the hearing[,]" nor does the record indicate a prescription for home health care. (Id. at 49.) Presumably, this discrepancy influenced the ALJ's conclusion that Donna was less than fully credible. But Donna argues that there is no discrepancy, citing her treating physicians' opinions and her "well-supported statements" regarding her ailments. (R. 23, Pl.'s Mem. at 30.) Dr. Blakeman, Donna's primary care physician, recommended during an April 25, 2017 appointment that Donna refrain from driving and working, (A.R. 641), but there are no clinical records prescribing or recommending that she receive home health care.

In discounting Donna's complaints related to her MS, the ALJ emphasized Dr. Curtin's notation in a treatment record that Donna "had not had a flare-up of her MS in years." (Id. at 49; see also id. at 686.) Although Dr. Curtin also noted that Donna experiences muscle fatigue and some weakness in her lower body, (id. at 686), both statements are contradicted by evidence within the medical record showing "5/5 strength," (see, e.g., id. at 726-28). Regarding her claims of memory issues and slurred speech, the ALJ points to medical records showing that Donna

13

has been "oriented to person, place and time" during her visits with Dr. Rabi and that she has no apparent "difficulty with communication," (see, e.g., id. at 741, 743, 745), which the ALJ found to refute the severity of her claims of disorientation, slurred speech, and dizziness indicated in Dr. Blakeman's treatment records, (id. at 115-16, 135).

On the other hand, the medical records do show an enlargement of Donna's white lesions since 2016, (id. at 579-81, 653-54), evidence the ALJ acknowledged in her decision, (id. at 44). While there is no indication in the record that Donna's MS has resulted in debilitating neurological symptoms, the Seventh Circuit does not allow ALJs to disregard "the effect the symptoms have on [a claimant's] ability to work . . . solely because they are not substantiated by objective medical evidence." *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (citing SSR 9607p(4)). The ALJ failed to explain why Dr. Curtin's statement that Donna has not experienced a relapse in her MS is at odds with the previously discussed MS-related neurological symptoms that Dr. Curtin and Dr. Blakeman documented in their treatment notes. The ALJ must do so on remand.

The ALJ's analysis concerning Donna's spine-related pain also gives this court pause. In discounting Donna's allegations in that regard, the ALJ placed great weight on treatment records indicating that she had full strength and that her condition was improving with treatment. (A.R. at 50-51.) However, on several occasions in which Donna indicated that her pain was improving with treatment, she still assessed her own pain as a 10 on a 10-point scale. (Id. at 732, 738, 745.)

14

The court cannot assume the role of a physician, and nor may it reweigh evidence already considered thoughtfully by the ALJ. *See Grotts*, 27 F.4th at 1278. But "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer*, 532 F.3d at 609. Indeed, although Donna's pain symptoms briefly subsided post-lumbar spine surgery, they relapsed shortly thereafter, a progression which is detailed within the medical records.

Further still, the ALJ failed to weigh evidence that may contradict her finding. After noting that Donna was diagnosed with moderate degenerative disc disease in 2016, the ALJ acknowledged that the MRIs indicate multilevel spondylosis and radiculopathy, (A.R. 50), yet failed to explain why she did not consider either diagnosis as supportive of Donna's claims of pain. Further, Dr. Faris Abusharif found during a September 15, 2017 pain treatment visit that Donna was limping on her left and right side, was stiff legged, had "musculature tender to palpation," positive straight-leg tests on both sides, diminished sensation in her lower extremities, and some limitations in spine movement. (Id. at 727.) The ALJ acknowledged Donna's pain and neurological issues when assigning her the lowest possible RFC, which suggests that the ALJ thoughtfully considered the evidence in the record. But before the court can affirm the ALJ's findings, it must understand why this evidence does not support Donna's complaints of severe pain, which would bolster her subjective allegations and may result in certain of her treating physicians' opinions receiving more weight than they did. The court

15

Case: 1:20-cv-01510 Document #: 36 Filed: 05/08/23 Page 16 of 16 PageID #:973

therefore remands this issue to the ALJ for further consideration in accordance with this decision.

## Conclusion

For the foregoing reasons, Donna's motion for summary judgment is granted, and the government's is denied. The matter is remanded for further proceedings.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**